```
         IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF PUERTO RICO
```

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>**Plaintiff**,<br><br>v.<br><br>[1] JOELVIS MONTERO-PEREZ,<br><br>**Defendant**. | CRIMINAL NO. 22-242 (RAM) |

**OPINION AND ORDER**

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Joelvis Montero-Perez's ("Defendant" or "Montero-Perez") *Motion to Set Aside Magistrate Judge's Detention Order and Request for De Novo Hearing* ("*Motion*"). (Docket No. 81). For the reasons set forth below, the Court **DENIES** Defendant's *Motion*. Montero-Perez shall remain detained pending trial.

**I. BACKGROUND**

On June 1, 2022, a Grand Jury indicted Montero-Perez on seven counts:

1. Conspiracy to Import Cocaine in violation of 21 U.S.C. §§ 952(a), 960, 963 ("Count 1");

2. Attempted Importation of Cocaine in violation of 21 U.S.C. §§ 952(a), 960 and 18 U.S.C. § 2 ("Count 2");

3. Conspiracy to Possess with Intent to Distribute a

Controlled Substance Aboard a Vessel Subject to the Jurisdiction of the United States in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b) and 21 U.S.C. § 960(b)(1)(B) ("Count 3");

4. Possession with Intent to Distribute a Controlled Substance Aboard a Vessel Subject to the Jurisdiction of the United States in violation of 46 U.S.C. § 70503(a)(1), 21 U.S.C. § 960(b)(1)(B), and 18 U.S.C. § 2 ("Count 4");

5. Conspiracy to Possess with Intent to Distribute Controlled Substances in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), and 846 ("Count 5");

6. Attempted Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(ii) and 18 U.S.C. § 2 ("Count 6"); and

7. Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of 18 U.S.C. §§ 924(c)(1)(A), and § 2 ("Count 7").

(Docket No. 6).

Defendant and Co-defendants are accused of attempting to "negotiate and coordinate a maritime drug venture of approximately 550 kilograms of cocaine that will be dispatched from Venezuela

and imported into PR."[1] (Docket No. 3-1 ¶ 7). Defendant and Co-defendants allegedly planned to keep 84 kilograms of that shipment as payment for their transportation services, and to purchase an additional 50 kilograms from the undercover agent with whom they negotiated. Id. ¶ 12.

On June 5, 2022, the U.S. Probation Office submitted a pretrial services report on Defendant, which recommended detention pending trial. (Docket No. 20). On June 10, 2022, Magistrate Judge Bruce McGiverin held the detention hearing. (Docket No. 31). Defense counsel argued in favor of setting conditions for release while the Government moved for detention. Id. The Magistrate Judge held the matter under advisement. Id. On June 16, 2022, the Magistrate Judge issued an *Order of Detention Pending Trial*. (Docket No. 45). The Magistrate Judge found that the offenses charged created a rebuttable presumption under 18 U.S.C. § 3142(e)(3) and that Defendant had not introduced sufficient evidence to rebut that presumption. Id. at 2. The Magistrate Judge concluded that the Government proved by clear and convincing evidence that no conditions of release would reasonably assure the safety of any other person and the community and by a preponderance of the evidence that no conditions of release would reasonably

---

[1] Consideration of the affidavit does not raise evidentiary concerns, as "[t]he rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f)(2)(B).

assure Defendant's appearance as required. Id. The Court's reasons for detention included:

1. The strong weight of the evidence against Defendant;
2. The fact that Defendant would be subject to a lengthy period of incarceration if convicted;
3. His significant family or other ties outside of the United States;
4. The nature of the charged offenses;
5. The Government's contention that Defendant is a high-level participant in an internal drug trafficking organization that imports large quantities of cocaine; and
6. The Government's contention that Defendant had access to large amounts of money and vessels captained by persons of different countries.

Id. at 2-3.

On November 27, 2022, Defendant filed the present *Motion* seeking *de novo* review of his detention order (Docket No. 81). This Court granted a *de novo* detention hearing, which was held on December 14, 2022. (Docket Nos. 82 & 84). The Government proceeded by proffer and argued that Defendant should remain under custody pending trial. (Docket No. 84). The Government primarily argued that Defendant resembles the paradigmatic drug trafficker for

which Congress created a presumption against release, citing the large amounts of cocaine and money involved, Defendant's alleged experience in drug transportation, and his foreign ties, including to boat captains abroad.

Defendant's *Motion* and arguments at the *de novo* detention hearing highlighted several reasons he believes release pending trial should be granted. He notes that there is no evidence that he has engaged in violent behavior. (Docket No. 81 ¶¶ 10, 33). He has no criminal record, and the gun seized during his arrest was in a closed bag in a car in which he was merely a passenger. Id. ¶¶ 26, 28, 33, 42-43, 45. He also argues that he has strong ties to the United States and limited international ties. Id. ¶¶ 32, 54. Furthermore, the U.S. Probation Office was not able to verify Defendant's background or identify bail resources at the time of his arrest. Id. ¶¶ 13, 29-30 (citing Docket No. 20 at 2, 5). The Court took the matter under advisement and ordered the U.S. Probation Officer to file an updated bail report (Docket No. 84), which he did on December 30, 2022 (Docket No. 91).

After considering the evidence, the Court finds that the Government has proven under the relevant standards of proof that there are no conditions of release which can reasonably assure the safety of any person and the community and Defendant's appearance as required. Therefore, Montero-Perez shall remain detained pending trial. Nothing in this *Opinion and Order* should be read as

affecting Defendant's presumption of innocence. *See* 18 U.S.C. § 3142(j).

## II. LEGAL STANDARD

### A. Standard of review for a detention or release order

A district court reviews a magistrate judge's order of detention or release under a *de novo* standard and "need not defer to the magistrate judge's findings or give specific reasons for rejecting them." <u>United States v. Cidraz-Santiago</u>, 18 F. Supp. 3d 124, 126 (D.P.R. 2014) (citations omitted). A district court may also "take additional evidence or conduct a new evidentiary hearing" when "the defendant has placed relevant facts at issue." <u>Id.</u>

### B. The Bail Reform Act

Pursuant to the Bail Reform Act of 1984 (the "Act"), a judicial officer must determine whether a person charged with an offense shall be detained or released pending trial. *See* 18 U.S.C. § 3142(a). Section 3142(e) of the Act provides that if, after conducting a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e).

**1. Standard of proof**

The standard of proof for detention on the grounds of dangerousness is **clear and convincing evidence**. Id. § 3142(f) (emphasis added). Clear and convincing evidence is "more than preponderance of the evidence but less than beyond a reasonable doubt." United States v. Acevedo-Ramos, 600 F. Supp. 501, 509 (D.P.R. 1984) (citations omitted). This standard requires "a high degree of certainty that the information presented supports the conclusion of dangerousness or risk to the obstruction of justice." Id. On the other hand, the standard of proof for detention on the grounds of risk of flight is preponderance of the evidence. *See* United States v. Patriarca, 948 F.2d 789, 793 (1st Cir. 1991).

**2. Factors Court must consider**

18 U.S.C. § 3142(g) sets forth the factors judicial officers must consider in determining whether there are conditions of release that assure a defendant's appearance and the safety of the community. These factors are: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's personal history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

### 3. The 18 U.S.C. § 3142(e) presumption

18 U.S.C. § 3142(e) creates a rebuttable presumption that no conditions can reasonably assure the appearance of the defendant and the safety of the community where there is probable cause that a defendant has committed one of the crimes listed in the statute or in the other circumstances set forth therein. *See* United States v. Vargas-Reyes, 220 F. Supp. 3d 221, 225 (D.P.R. 2016) (citing 18 U.S.C. § 3142(e)(3)). A grand jury indictment alone suffices to trigger the presumption. Id. (citing, *inter alia*, United States v. Vargas, 804 F.2d 157, 163 (1st Cir. 1986)).

In the case of drug trafficking crimes, the presumption comes from "Congress's findings that drug traffickers often have the resources and foreign contacts to escape to other countries" and that "[f]orfeiture of even a large bond may be just a cost of doing business, . . . hence drug traffickers pose special flight risks." United States v. Palmer-Contreras, 835 F.2d 15, 17 (1st Cir. 1987); *see also* United States v. Jessup, 757 F.2d 378, 385 (1st Cir. 1985), partially abrogated on other grounds by United States v. O'Brien, 895 F.2d 810 (1st Cir. 1990); United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988); United States v. Dillon, 938 F.2d 1412, 1416-17 (1st Cir. 1991).

Once triggered, the 18 U.S.C. § 3142(e)(3) presumption imposes on the defendant a burden of production. *See* Vargas-Reyes, 220 F. Supp. at 225. The defendant may satisfy this burden of

production by introducing at least some evidence contrary to the facts presumed. Id. For that reason, "[t]he burden is not heavy." Id. Notably, the burden of persuasion always rests with the Government in both presumption and non-presumption cases. Id.

However, the 18 U.S.C. § 3142(e)(3) presumption does not simply vanish once a defendant has produced some evidence. *See* Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d at 383-84, 387. Instead, judges must keep the presumption in mind as an additional factor to the four listed in Section 3142(g). *See* Palmer-Contreras, 835 F.2d at 18; Jessup, 757 F.2d at 383-84, 387. In drug trafficking cases, the weight afforded to the presumption depends on how closely the defendant resembles the paradigmatic drug trafficker for whom the risk of flight is particularly high; "the less those features resemble the congressional paradigm, the less weight the [court] will likely give to Congress's concern for flight." Jessup, 757 F.2d at 387; *see also* Palmer-Contreras, 835 F.2d at 18; Perez-Franco, 839 F.2d at 870.

### III. DISCUSSION

**A. The nature and circumstances of the offense charged**

Montero-Perez was indicted on seven counts of drug trafficking crimes. (Docket No. 6). The offenses charged in the indictment are serious. If convicted, Defendant will be facing a mandatory minimum sentence that exceeds 10 years. Given the

severity of the punishment prescribed by the relevant statutes, this factor clearly favors detention.

## B. The weight of the evidence against Defendant

The weight of the evidence against Defendant appears to be quite strong. The undercover agent reportedly met with Defendant and one of his Co-defendants on multiple occasions between April and May 2022 to discuss the drug deal. (Docket No. 3-1 ¶ 7). The Government proffered that all conversations between the undercover agent and Defendant were recorded. Accordingly, this factor also weighs in favor of detention.

## C. Defendant's personal history and characteristics

There are certainly aspects of Defendant's personal history and characteristics that are favorable to him, but other elements of his background weigh in favor of detention pending trial.

### 1. Aspects of Defendant's personal history and characteristics that weigh in favor of release

Defendant indeed has ties to the United States. He became a naturalized citizen in 2019. (Docket No. 91 at 2). He currently lives in Ocoee, Florida with his consensual partner.[2] Id. at 1-2; (Docket No. 81 ¶ 39). Defendant has two siblings in Florida, and two siblings in other U.S. states. (Docket No. 91 at 2). His

---

[2] The Court notes that Defendant and his consensual partner are not married and do not share any biological children. (Docket Nos. 91 at 1-2; 81 ¶ 39); see also United States v. Boado, 835 F. Supp. 920, 923 (E.D. Tex. 1993) (listing the defendant's "informal relationship with his present wife" as a factor that weighed against release pending trial).

sister, who lives in Fort Lauderdale, Florida and administers the family's Air B&B, has agreed to serve as Defendant's third-party custodian. Id. at 5. He has two sons from previous relationships, one of which lives with that sister. Id. at 2.

Defendant is self-employed as a handyman for the family Air B&B in Fort Lauderdale. Id. at 3. He also works as an Uber driver and rents out a jet ski for additional income. Id. Defendant disclaims any mental health or substance abuse issues, and he has no criminal record. Id. at 4.

2. **Aspects of Defendant's personal history and characteristics that weigh in favor of detention**

However, there are many elements of Defendant's personal history and characteristics that the Court finds outweigh the favorable ones and indicate that no conditions for release could reasonably assure Defendant's appearance. Despite Defendant's assertion that his international ties are no longer salient, the Court finds that Defendant indeed has strong international ties that increase his risk of flight. Defendant, who is 36, was born in the Dominican Republic and travels there regularly. Id. at 2. His father and one of his siblings reside there, as does his other son from a previous relationship. Id.

Furthermore, Defendant seems to have no current ties to Puerto Rico, where his case will be heard. If released, he would reside in Ocoee, Florida. His sister, who resides over three hours away

from Ocoee in Fort Lauderdale, has agreed to be his third-party custodian.[3] However, Defendant would still need to travel by plane to Puerto Rico when his appearance is required. Though he has lived in Puerto Rico for years at a time in the past, he appears to have no remaining connections to this jurisdiction. (Docket No. 91 at 2).

### i. Defendant fits the paradigm case for which the 18 U.S.C. § 3142(e)(3) presumption was crafted

Finally, Defendant's case appears to fit well within the paradigmatic drug trafficking case that Congress had in mind when it crafted the 18 U.S.C. § 3142(e)(3) presumption against release. First, it involves large amounts of cocaine. Based on recorded conversations with the undercover agent, Defendant allegedly sought to transport 550 kilograms of cocaine from Venezuela to Puerto Rico. (Docket No. 3-1 ¶¶ 7, 12). He purportedly planned to keep 84 kilograms of that shipment as payment for his transportation of the drugs, and to purchase 50 additional kilograms from the undercover agent. Id. The special agent's affidavit states that at the time it was written on May 15, 2022, the amount of cocaine that Defendant and Co-defendant planned to keep for themselves (134 kilograms) was worth an estimated street

---

[3] Directions from Fort Lauderdale, FL to Ocoee, FL, Google Maps, https://www.google.com/maps/dir/Fort+Lauderdale,+FL/Ocoee,+FL/@27.3410042,-81.9316342,8z/data=!3m1!4b1!4m14!4m13!1m5!1m1!1s0x88d9012720facaf5:0x7602be7540bf8ebe!2m2!1d-80.1373174!2d26.1224386!1m5!1m1!1s0x88e77e46f3bc2d81:0xaa7eb8cafda02b0b!2m2!1d-81.5439619!2d28.5691677!3e0?hl=en (last visited January 23, 2023).

value of at least $2.01 million USD. (Docket No. 3-1 ¶ 15). The agent stated that based on her experience, 134 kilograms of cocaine "is indicative of wholesale distribution and not for personal use." Id. The Government proffered that the street value of the total amount of cocaine Defendant was planning to traffic is over $9 million.

Beyond the value and quantity of cocaine itself, Defendant allegedly stated that he was an experienced drug trafficker. Courts may consider uncharged conduct in assessing a defendant's dangerousness. *See* United States v. Rodriguez, 950 F.2d 85, 88-89 (2d Cir. 1991). Although Defendant has no criminal record, the Government proffered that he told the undercover agent that he had done this over 25 times during Hurricane María. Through the undercover agent's meetings with Defendant, he allegedly learned that Defendant had been trafficking drugs for approximately six years and had successfully trafficked drugs into Puerto Rico from South America, the Dominican Republic, and St. Martin. (Docket No. 3-1 ¶ 8).

A government database also purportedly shows that Defendant traveled internationally four times between February 2021 and May 2022. Id. ¶ 10. One of those trips was to the Dominican Republic, allegedly to coordinate the details of the 550-kilogram drug smuggling maritime venture that Defendant was negotiating with the undercover agent. Id. The pretrial services report also states

that Defendant has traveled to Mexico. (Docket No. 91 at 2). Defendant also appears to have connections to boat captains abroad. The undercover agent's meetings reportedly revealed that Defendant was "in direct contact with individuals based in the Dominican Republic and in charge of recruiting boat captains in the Dominican Republic and St. Martin to conduct maritime drug ventures." (Docket No. 3-1 ¶ 9).

The sophistication of Defendant's alleged plan also suggests he is an experienced drug trafficker. He and his Codefendant reportedly told the undercover agent that they had recruited boat captains that would sail from St. Martin to an at-sea location where an aircraft would drop the 550 kilograms of cocaine. (Docket No. 3-1 ¶ 11). From there, the captains would sail to Puerto Rico, where a 15-person receiving crew would be waiting to pick up the drugs. Id. The crew would then exchange the drugs with the undercover agent. Id. The Government proffered that Defendant told the undercover agent that his people would be armed. Additionally, Defendant was allegedly the leader of this drug trafficking scheme, which is a factor that courts consider as well. *See* United States v Alonso, 832 F. Supp. 503, at 507 (D.P.R. 1993); United States v. Beeks, 2005 WL 1940014, at *4 (S.D. Ind. 2005).

Furthermore, to pay for the 50 additional kilograms of cocaine, Defendant met with the undercover agent on May 12, 2022 and paid him $100,000 in cash. (Docket No. 3-1 ¶ 13). Defendant's

ability to procure $100,000 in cash further suggests that he has access to resources that make him a greater flight risk, as Congress was concerned with when it created the 18 U.S.C. § 3142(e) presumption. *See* Palmer-Contreras, 835 F.2d at 17; Jessup, 757 F.2d at 385; Perez-Franco, 839 F.2d at 870; Dillon, 938 F.2d at 1416-17.

For the foregoing reasons, Defendant fits the description of the paradigmatic drug trafficker for which the 18 U.S.C. § 3142(e) presumption was specifically created. Thus, Defendant's personal history and characteristics also weigh in favor of detention.

### D. The nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release

The fourth factor does not weigh heavily in either direction. On the one hand, Defendant has no record of violent behavior. (Docket No. 81 ¶ 10). On the other hand, Defendant's ability to introduce drugs into the community if released presents a danger to others. *See* United States v. Pina-Aboite, 97 Fed. Appx. 832, 836 (10th Cir. 2004) (citation omitted) ("[T]he risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community."); United States v. Hernandez, 778 F. Supp. 2d 1211, 1230 (D.N.M. 2011). The Government proffered that allowing Defendant to return to his address of residence would be putting him back in the exact same residence and under the control

of the same people where he had negotiated with the undercover agent for the transportation of over 550 kilograms of cocaine.

Defendant's alleged drug transportation business seems to involve international travel in order to recruit boat captains, which may be difficult for him to do if confined to his home. However, according to the agent's affidavit, given the quantity of cocaine that Defendant allegedly planned to keep, he may also be in the business of selling cocaine himself, which could be done more easily from his home in Florida. In all, the fourth factor does not seem to contribute strongly to the case for detention, but it does not readily rebut the other factors that do weigh against release.

## IV. CONCLUSION

For the foregoing reasons, Defendant Joelvis Montero-Perez's *Motion* is **DENIED**. Defendant shall remain detained pending trial.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 23rd day of January 2023.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge